UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA SALINAS,

     Plaintiff,                 Civil Action No. 12-14839

          v.                   Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____/

**OPINION AND ORDER**

    Plaintiff Barbara Salinas ("Plaintiff") brings this action under 42 U.S.C. §405(g),

challenging a final decision of Defendant Commissioner denying her application for

Supplemental Security Income ("SSI") under the Social Security Act.  The parties have filed

cross motions for summary judgment.  For the reasons set forth below, Plaintiff's motion is

GRANTED to the extent that the case will be remanded for further administrative

proceedings consistent with this opinion.  Defendant's motion is DENIED.

**PROCEDURAL HISTORY**

    Plaintiff applied for SSI on August 27, 2009, alleging disability as of January 1, 2004

(Tr. 146).  After the initial claim denial, Plaintiff requested an administrative hearing, held

on April 26, 2011 in Detroit, Michigan (Tr. 41).  Administrative Law Judge ("ALJ")

-1-

Raymond Souza presided.  Plaintiff, represented by attorney Thomas Bertino, testified  (Tr. 46-66), as did Vocational Expert ("VE") Dr. Don Harrison (Tr. 66-74).  On June 9, 2011, ALJ Souza found that Plaintiff was not disabled (Tr. 35).  On September 21, 2012,  the Appeals Council denied review (Tr.1-7).  Plaintiff filed the present action on October 31, 2012.

## BACKGROUND FACTS

Plaintiff, born December 20, 1967, was 43 at the time of the administrative decision (Tr. 35, 146).  She received a GED (Tr. 189), and worked previously as a daycare provider and housekeeper (Tr. 185).  She alleges disability as a result of a bipolar disorder, Post Traumatic Stress Disorder ("PTSD"), depression, migraine headaches, and anxiety (Tr. 184).

### A.  Plaintiff's Testimony

Plaintiff offered the following testimony:

She currently lived in Wyandotte, Michigan , in a two-story house with  two of her four adult children and two grandchildren (Tr. 46-47).  She stood 5 feet and one-half inch and weighed 203 pounds (Tr. 48).  She lost 40 pounds in the past seven years due to improved dietary habits (Tr. 48).  She could read and perform simple mathematics (Tr. 49).  She supported herself with food stamps and public assistance (Tr. 49).  She worked for approximately four months in 2008 as daycare provider but had not worked since (Tr. 50). Plaintiff also worked as a housekeeper at a hotel in 2001 and 2002 (Tr. 50).

*The ALJ then conferred with Plaintiff's counsel, noting that two medical source statements were internally inconsistent* (Tr. 51, 57).  *The ALJ noted that the source statement*

*that Plaintiff was "capable of moderate stress normal work" was contradicted by a later statement by the same source that her psychological conditions would render her "off task" for 25 percent of the workday* (Tr. 51-57).

Plaintiff experienced PTSD after being sexually assaulted as a 14-year-old (Tr. 58). Her oldest child was born as a result of the rape (Tr. 58). Symptoms of PTSD included discomfort around groups of people, multiple weekly "flashbacks" to the assault, nightmares and daily crying jags (Tr. 59-60). When she experienced symptoms, she relied on her daughter to help care for the grandchildren (Tr. 60). Plaintiff's sister took the two children to school (Tr. 60). She experienced memory and concentrational problems, noting that her seven-year-old grandchild would periodically correct her reading skills (Tr. 62). She experienced problems completing tasks (Tr. 62). She saw ghosts (Tr. 62). She experienced daytime drowsiness but was not sure that it was attributable to her medication (Tr. 62). She napped for approximately two-and-a half hours each afternoon (Tr. 63).

Biweekly migraine headaches required Plaintiff to lie down between eight and twenty-four hours at a stretch (Tr. 64). Her daughters cared for her grandchildren during the migraine episodes (Tr. 64). She was able to stand for 20 minutes, walk for 10, and sit for 30 (Tr. 65). She was unable to lift more than 10 pounds due to back, arm, and neck pain (Tr. 65).

### B.  Medical Evidence[1]

### 1.  Treating Sources

February, 2008  treating notes by Rodney Poling, D.O. state that Plaintiff took Vicodin after hitting her head (Tr. 239).   A neurological examination performed the following month was unremarkable (Tr. 245-246).  September, 2008 imaging studies of the cervical spine showed only "minimal degenerative change" (Tr. 244).  The same month, neurologist Nancy Juopperi, D.O. noted that Plaintiff was taking Topiramate without side effects and no longer experienced headaches (Tr. 256).  An examination was unremarkable (Tr. 256-257).

July, 2009 notes by social worker Judy Russell state that Plaintiff reported depression due to the foreclosure of her home and her husband's move to find work (Tr. 265).  Plaintiff reported that a rape occurring two weeks before her 15th birthday resulted in the pregnancy and birth of her first child (Tr. 362).  She reported depression as a result of the same daughter's current accusation that Plaintiff lied about being attacked (Tr. 362).  She was assigned a case manager to help her with "non-therapy" issues (Tr. 265).  Notes from later the same month state that Plaintiff's mood was improved after working with a case manager (Tr. 264).  Psychiatrist John Gherman, M.D. found that Plaintiff had "prominent depression

---

[1]Conditions wholly unrelated to the disability have been reviewed in full but omitted from the present discussion.

and PTSD symptoms" (Tr. 367).  He prescribed Lexapro and assigned Plaintiff a GAF of 50[2]

(Tr. 366-367).  Plaintiff denied that she took daytime naps (Tr. 263).  The following month,

Plaintiff, noting that she faced foreclosure, stated that she cried every other day (Tr. 261).

Russell opined that "[c]onsidering the stressors," Plaintiff "appear[ed] to be holding her own"

(Tr. 260).  Plaintiff reported an improved mood after her husband payed the gas bill, allowing

service to resume (Tr. 257).  She denied mood swings (Tr. 358).  In October, 2009, Plaintiff

denied PTSD symptoms (Tr. 352).

March, 2010 treating notes state that Plaintiff felt "okay" (Tr. 344).  The following

month, Plaintiff reported stress as a result of a custody  dispute regarding her grandchildren

(Tr. 336).  In April, 2010, Dr. Juopperi opined that Plaintiff was doing "quite well" on her

current migraine medication (Tr. 373).  August, 2010 records by psychiatrist Sun Park, M.D.

note that "depression and sleep are getting better" (Tr. 331).  The following month, Plaintiff

reported stress as a result of marital problems and their impact on the custody dispute (Tr.

310, 326).

Also in September, 2010, Dr. Juopperi noted that Plaintiff was "doing well in regards

to her headaches" but experienced approximately one migraine a month lasting "12 to 24"

 (Tr. 381).  Imaging studies of the brain were unremarkable (Tr. 381).  Dr. Jopperi opined

that the headaches were stress related (Tr. 379-381).  October, 2010 counseling records state

---

[2]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision*(*"DSM-IV-TR"*) at 34 (4th ed. 2000).

that Plaintiff was depressed about the end of her marriage but appeared fully oriented with an appropriate affect (Tr. 405). Treating notes state that Plaintiff's estranged husband threatened to have her evicted from her house (Tr. 396). Plaintiff noted that her husband once burned down their house "for the insurance money" (Tr. 396). The same month, notes by Dr. Park state that Plaintiff woke up three to four times a night and cried every day (Tr. 420).

In March, 2011, Plaintiff reported that she experienced migraine headaches once or twice a week due to stress (Tr. 434). Dr. Juopperi also completed a medical source statement, indicating that Plaintiff experienced severe migraine headaches once to twice a week (Tr. 423). She found that the condition caused mental confusion, nausea, and light and sound sensitivity (Tr. 423). Dr. Juopperi noted that the condition was caused by stress, a head injury, and lack of sleep (Tr. 424). She opined that Plaintiff was capable of jobs involving "moderate stress," based on her ability to take care of her two grandchildren (Tr. 424). She found that during times Plaintiff experienced headaches, she would be unable to perform any work (Tr. 425). She noted that Plaintiff should avoid noise, bright lights, fumes, and temperature extremes (Tr. 426).

The same month, Dr. Kim completed a psychiatric evaluation of Plaintiff, stating that she experienced depression, anxiety, insomnia, poor short term memory, and limited judgment (Tr. 428-429). He found that Plaintiff experienced marked or extreme limitations in social functioning which would result in difficulty holding a job as well as marked or extreme limitation in concentration, persistence, or pace (Tr. 430-431). Dr. Kim noted that

-6-

Plaintiff had demonstrated "withdrawal from situations," decompensation, the "inability to cope with schedules," and the "inability to adapt to changing demands" (Tr. 432). He reported that Plaintiff's current medication of Trazadone caused "sleepiness and lethargy" (Tr. 433).

### 2. Non-Treating Sources

In October, 2009, B.D. Choi, M.D. performed a non-examining Physical Residual Functional Capacity Assessment of Plaintiff's treating records on behalf of the SSA, finding that Plaintiff could lift 10 pounds frequently and 20 pounds occasionally; sit, stand, or walk for about six hours in an eight-hour workday; and push and pull without limitation (Tr. 268). He found that Plaintiff was capable of frequent balancing, stooping, kneeling, crouching, and crawling; and occasional climbing (Tr. 269). He found the absence of manipulative, visual, or communicative limitations but determined that Plaintiff should avoid concentrated exposure to hazards (Tr. 271). Dr Choi concluded that Plaintiff's claims of limitation were only "partially credible," noting that she was able to "handle finances, shop, cook, [and] do chores with little difficulty" (Tr. 272).

In December, 2009, psychologist Hugh D. Bray, Ph.D. conducted a consultative examination of Plaintiff on behalf of the SSA, noting her claims of migraines, bipolar disorder, and PTSD (Tr. 275). Plaintiff opined that she was unable to work because she was "very nervous around people" (Tr. 276). She reported that she had been going to therapy since May, 2009 (Tr. 276). She indicated that in her former position as a housekeeper, her relationship with supervisors and peers was "okay" (Tr. 276). She reported that her disability

-7-

did not prevent her from taking care of her grandchildren (Tr. 277). She denied hallucinations (Tr. 278). Dr. Bray observed that Plaintiff appeared anxious with low self esteem but adequate judgment (Tr. 278). She was "[v]ery slow in responding" (Tr. 279). He assigned her a GAF of 45 with a "guarded to poor" prognosis (Tr. 280).

The same month, Leonard C. Balunas, Ph.D. completed a non-examining Psychiatric Review Technique on behalf of the SSA, noting the presence of dysthymic and anxiety-related disorders (Tr. 286, 289-291). Under the "'B' Criteria" of the Technique, Dr. Balunas found the presence of mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, and pace (Tr. 296). He found that Plaintiff could "perform unskilled tasks on a regular, sustained basis, citing her ability to socialize with family members, do chores, and perform self care tasks (Tr. 298).

Dr. Balunas also completed a Mental Residual Functional Capacity Assessment, finding that Plaintiff experienced moderate limitations in understanding, remembering, and carrying out detailed instructions; maintaining concentration for extended periods; and interacting appropriately with the general public (Tr. 282-283). He found that Plaintiff could "perform unskilled tasks involving 1 and 2 step instructions with limited need for sustained concentration and minimal contact with the general public" (Tr. 284).

### 3. Material Submitted Subsequent to the June 9, 2011 Administrative Opinion

May, 2011 treating notes by Dr. Poling state that Plaintiff experienced continued headaches and had also been diagnosed with shingles (Tr. 436). Notes created between July,

2011 and January, 2012 state that Plaintiff continued to receive prescriptions for Vicodin

(Tr. 436-437).[3]

### C.  Vocational Expert Testimony

Dr. Harrison categorized Plaintiff's past relevant work as a child monitor as

exertionally medium[4] with a Specific Vocational Preparation ("SVP") of 3[5] and

---

[3]

Material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993).  Sentence Six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..."

Because Plaintiff does not rely on the newly submitted evidence in arguing for remand, the Court need not consider whether good cause exists for its late submission or if it would be likely to change the ALJ's findings.

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

[5]SVP measures the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C, http://www.occupationalinfo. org/appendxc1.html#II (last visited on November 18, 2013).  Pursuant to 20 C.F.R. 404.1568, "unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP

"housekeeping-cleaner," SVP 2 (Tr. 68). The ALJ posed the following set of hypothetical

limitations to the VE taking into account of Plaintiff's age, education, and work experience:

> [A]ssume a person . . . who's able to do light work with no climbing of
> ladders, ropes, or scaffolds, occasional climbing of ramps or stairs, occasional
> stooping, crouching, kneeling, and crawling, with occasional – with only
> occasional rotation, flexion and extension of the neck. And occasional
> overhead reaching bilaterally. Also must avoid all use of hazardous machinery
> and all exposure to unprotected heights, work limited to simple, as defined in
> the DOT, as SVP levels one and two, routine and repetitive tasks, must be
> work in a low stress job defined as having only occasional decision-making,
> only occasional changes in the work setting and no strict production quota with
> an emphasis on a per shift basis, rather than a per hour basis. Only occasional
> interaction with the general public, coworkers and supervisors. Could that
> person perform their past work? (Tr. 68-69).

The VE testified that given the above limitations, the individual would be unable to perform

any of Plaintiff's past relevant work, but could perform the work of a small products

assembler, DOT number 739.687-080, SVP 2 (1,500 jobs in existence in the regional

economy). The VE then considered the ALJ's additional restrictions:

> [S]edentary level, with a sit-stand option and the person could sit or stand
> alternatively at will, provided the person is not off task by more than 10
> percent. And only brief interaction with the general public, and brief
> interaction with coworkers and supervisors.

The VE responded that the additional limitations would allow the individual to perform a

range of jobs as a small products assembler, DOT no. 732.684-062, SVP 2 (500) (Tr. 70).

The VE found that the need for unscheduled daily breaks, three or more unexcused absences

a month, or the inability to focus for more than 20 percent of the workday would preclude

---

of 5-9 in the DOT." SSR 00-04p.

all gainful employment (Tr. 70-71).

In response to questioning by Plaintiff's attorney, the VE testified that multiple episodes of PTSD symptoms, the need to lie down between eight and twenty-four hours at a time due to migraines; the need to nap for two hours of each workday; or marked deficiencies in social functioning or concentration would also preclude all work (Tr. 72-74).

### D.    The ALJ's Decision

Citing the medical records, ALJ Souza found that Plaintiff experienced the severe impairments of "migraine headache disorder, bipolar disorder, . . . PTSD, major depressive disorder, obesity, [and] degenerative disc disease of the cervical spine" but that none of the conditions met or equaled any impairment listed in 20 CRF Part 404, Subpart P, Appendix 1 (Tr. 26). Citing Dr. Bray's findings, the ALJ found that Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 27). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for light work with the following additional limitations:

> [C]laimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs. The claimant can occasionally stoop, kneel, crouch, and crawl. The claimant can occasionally rotate, flex, and extend her neck. The claimant can perform occasional overhead reaching with both upper extremities . . . [and] must avoid all use of hazardous machinery and avoid working near unprotected heights. Mentally, the claimant is limited to the performance of simple, routine, repetitive tasks, defined as jobs with a Specific Vocational Preparation of one or two. The claimant is limited to the performance of low stress work defined as involving only occasional decision making and involving only occasion[al] changes in the work setting. The claimant cannot perform a job that involves any strict production quotas. The

claimant can tolerate only occasional interaction the general public, coworkers, and with supervisors (Tr. 28).

Citing the VE's testimony, the ALJ found that while Plaintiff was unable to perform any of her past relevant work, she could perform the job of an assembler (Tr. 34).

The ALJ discounted Plaintiff's allegations of marked limitations in social functioning, noting that she "has had very little problems when interacting with prior employers, coworkers, or supervisors" (Tr. 30). He cited Dr. Bray's findings that Plaintiff did not exhibit significant memory problems (Tr. 30). While Plaintiff alleged visual hallucinations at the hearing, the ALJ cited Plaintiff's December, 2009 denial of such episodes (Tr. 31). As to symptoms of PTSD, the ALJ found that "mood swings, nightmares, and depression have eroded her stress tolerances, but not to the alleged degree, given the inconsistencies between her testimony and the evidence of record" (Tr. 31).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

"presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the

-13-

residual functional capacity to perform specific jobs existing in the national economy."
*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff's motion for summary judgement contains several overlapping arguments in favor of remand. She contends first that the ALJ erred by declining to adopt the opinions of treating physicians Drs. Park (psychiatrist) and Juopperi (neurologist). *Plaintiff's Brief,* 12, *Docket #12.* Second, she argues that the VE's testimony that she could work as an assembler stands at odds with her inability to perform production work. *Id.* at 20. Third, she argues that the ALJ's adoption of Dr. Balunas' December, 2009 findings constitute error given that Balunas did not review the treating source records created in 2010 and 2011. *Id.* at 23. Fourth, she argues that the ALJ misstated the record in making his credibility determination. *Id.* at 24. In her fifth and sixth arguments, Plaintiff argues that the RFC does not reflect the full impact of her severe impairments, considered either individually or in combination. *Id.* at 31, 34. Finally, she argues generally that the ALJ's failure to abide by "statute, case law, regulation, and ruling" deprived her of her due process rights. *Id.* at 35.

Because arguments one and three pertain to the weight accorded various medical sources, they will be considered in tandem. The contention that the ALJ's credibility determination was supported by an erroneous interpretation of the record will be considered second. Arguments two, five, six, all pertaining to alleged deficiencies in the hypothetical question or RFC will be considered third. Plaintiff's generalized argument that the ALJ's

-14-

many errors deprived her a fair hearing will be addressed last.

### A.  Weight Accorded the Treating and Non-Treating Sources (Arguments I, III)

Plaintiff faults the ALJ for declining to adopt disability opinions by both Drs. Park and Juopperi.  *Plaintiff's Brief* at 12.  On a related note, she submits that the ALJ erred by according "significant" weight to Dr. Balunas' non-examining findings, noting that Dr. Balunas made his December, 2009 findings without benefit of the 2010 treating records showing a decline in Plaintiff's functioning.  *Id.* at 23 (citing Tr. 31).

An opinion of limitation or disability by a treating source is entitled to deference. "[I]f the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue, 573* F. 3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544  (6th Cir. 2004)).  Further,

> [i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion.  *Wilson,* at 544.

In addition, "the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue* 661 F.3d 931, 937 (6th Cir. 2011)(citing 20 C.F.R. § 404.1527(c)(2)).

As required by 20 C.F.R. § 404.1527, the ALJ supplied a number of reasons for according "little weight" to the treating opinions.   Nonetheless, the purportedly "good reasons" for rejecting the treating sources rely on a slanted, if not erroneous take on the evidence (Tr. 32-33).   The ALJ rejected Dr. Juopperi's opinion on the basis that her finding that Plaintiff could perform moderately stressful work (Tr. 424) contradicted her accompanying statement that Plaintiff would be off task at least 25 percent of the time (Tr. 425).   However,  the issue of whether she was capable of handling moderate stress *while she is working* is not inconsistent with her need to be off task for a percentage of the workweek *while she is experiencing headaches*.

The ALJ's adoption of Dr. Balunas' assessment over the opinions of Drs. Park and Juopperi is additionally problematic.   First, neither Dr Balunas  nor Dr. Bray, performing December, 2009 non-examining and consultative examinations respectively, had the benefit of the 2010 or 2011 treating records.   The ALJ's favoring older findings over more current ones can constitute reversible error. *See Hamblin v. Apfel,* 2001 WL 345798, *2 (6th Cir. March 26, 2001)(affirming an ALJ's rejection of a treating physician's "outdated" opinion on the basis that a consultive physician had performed a more recent appraisal with contradicting findings). The Sixth Circuit's holding favoring the use of updated  information is particularly applicable to the instant case, where the newer records were created by treating sources.   Among the new findings are March, August, and October, 2010 treating notes showing that situational stressors caused worsened psychological symptoms such as daily crying jags and significant sleep disturbances (Tr. 310, 336, 396, 420), and Dr. Juopperi's

-16-

March, 2011 records stating that Plaintiff's migraines had increased in frequency (Tr. 434). *See Sayles v. Barnhart*, 2004 WL 3008739, *23 (N.D.Ill. December 27, 2004)(adoption of "outdated and inadequate" non-treating findings constitutes grounds for remand). The ALJ's rejection of Dr. Park's April, 2011 finding of marked psychological limitations is likewise undermined by its reliance on the December, 2009 consultative and non-examining opinions**.**

### B.  The Credibility Determination (IV)

Plaintiff also argues that the ALJ's credibility determination is based on a distorted interpretation of the evidence.  *Plaintiff's Brief* at 24.

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms.  "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186, *2.  The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.* [6]  An ALJ's credibility is entitled to deference by the reviewing

---

[6]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv)

-17-

court. *See Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531 (6th Cir. 1997)(because

"an ALJ is charged with the duty of observing a witness's demeanor and credibility," the

"findings based on the credibility of the applicant are to be accorded great weight.")

The ALJ did not err in rejecting Plaintiff's alleged degree of cervical spine

problems, noting that the claims of physical pain were unsupported by the imaging studies

(Tr. 29).   As to the psychological limitations, however, the credibility determination relies

on portions of the record which, considered in isolation, appear to support a non-disability

finding, but read in context are either inconclusive or support Plaintiff allegations of

disability.   The ALJ's observation that Plaintiff was able to "interact appropriately" during

the December, 2009 consultative examination by Dr. Bray (Tr. 30) does not establish that she

was capable of doing so forty hours every week.   Moreover, because Plaintiff did not allege

that she was incapable of interacting appropriately for short periods, the fact that she could

interact normally for a relatively short consultative examination should not be used to

undermine her credibility.   Consistent with the findings in Section **A**, the weight placed on

the older consultative findings in proportion to that given the newer treating records is

independently problematic.   The ALJ's finding that the ability to care for two grandchildren

---

The type, dosage, effectiveness, and side effects of any medication you take
or have taken to alleviate your pain or other symptoms; (v) treatment, other
than medication, you receive or have received for relief of your pain or other
symptoms; (vi) Any measures you use or have used to relieve your pain or
other symptoms ... and (vii) Other factors concerning your functional
limitations and restrictions due to pain or other symptoms."

-18-

supported the non-disability finding ignores Plaintiff's testimony that she relied on her daughters to take care of the grandchildren during her frequent migraine episodes (Tr. 64). Because the credibility determination relies in part on a myopic, if not erroneous interpretation of the record, a remand on this basis is also appropriate.

### C. The Hypothetical Question/RFC (II, V, IV)

Plaintiff argues in these sections that the hypothetical question to the VE did not account for her full degree of psychological limitation. *Plaintiff's Brief* at 20. She contends that as a result, the VE's testimony that she could work as a small products assembler is not supported by substantial evidence. *Id.* at 22. She also argues that the ALJ did not consider the full import of the Step Two severe impairments in crafting the RFC found in the administrative opinion. *Id.* at 31-35.

Plaintiff is correct that vocational testimony given in response to an incomplete hypothetical question does not constitute substantial evidence. *Varley v. Secretary of HHS*, 820 F.2d 777, 779 (6th Cir.1987). Nevertheless, her argument that the hypothetical question did not account for all of her physical limitations is not well taken. As discussed above, the treating records and imaging studies do not support the inclusion of physical limitations greater than those found in the hypothetical question or RFC. Consistent with the requirements of SSR 02-1p, the ALJ acknowledged that obesity constituted a severe impairment, but found that the condition did not create greater limitations than those found in the RFC (Tr. 27). As to the mental impairments, I disagree with Plaintiff's contention that the hypothetical modifiers of simple, routine and repetitive tasks, low stress work, occasional

-19-

decision making, and occasional interaction with the public and supervisors are intrinsically inadequate to address moderate deficiencies in concentration, persistence, and pace. *Plaintiff's Brief* at 22 (citing Tr. 68-69).   *See Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001).[7]

Plaintiff's generalized final argument that the ALJ did not abide by the applicable case law, regulations, and rulings is adopted only to the extent found in Sections **A.** and **B.,** above. Upon remand, the ALJ will also consider whether Plaintiff is  entitled to benefits "for any closed, continuous period of not less than 12 months, following the date of [her] claim." *Pena v. Barnhart*  2002 WL 31487903, *11  (S.D.N.Y.October 29, 2002); 42 U.S.C. § 1382c(a)(3)(A), 42 U.S.C. § 423(d)(1)(A).

In closing, the Court finds that while Plaintiff has demonstrated substantial work-related impairments, she has not, for purposes of her summary judgment motion, established an "overwhelming" case for disability.  As such, she is entitled to a remand for further consideration rather than an award of benefits.  *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir.1994).

## CONCLUSION

For these reasons, Plaintiff's motion is GRANTED to the extent that the case will be remanded for further administrative proceedings consistent with this opinion.  Defendant's

---

[7]

However, upon remand, a finding that Plaintiff indeed experiences greater mental limitations than those found in the current RFC would require correspondingly stringent hypothetical modifiers.

motion is DENIED.  Judgment will enter in favor of Plaintiff.

IT IS SO ORDERED.


Dated: December 18, 2013               s/ R. Steven Whalen
                                       R. STEVEN WHALEN
                                       UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on
December 18, 2013, electronically and/or by U.S. mail.

                                       s/Michael Williams
                                       Case Manager to the
                                       Honorable R. Steven Whalen